IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| JANELTA HENDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 03-0133-CV-W-HFS |
| | ) | |
| ADT SECURITY SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

On February 18, 2003, plaintiff Janelta Henderson filed suit against her former employer, ADT Security Services, Inc., alleging various claims of racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Missouri Human Rights Act, Mo. Rev. Stat. § 213.010, et seq.; and 42 U.S.C. § 1981. Defendant ADT has filed a motion for summary judgment based on plaintiff's failure to disclose her claims against ADT in her bankruptcy filings. For the reasons set forth below, ADT's motion for summary judgment relating to plaintiff's bankruptcy will be granted.

**I.     Summary Judgment Standards**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©; Poller v. Columbia Broad. Sys., Inc., 368 U.S. 464, 467 (1962). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In ruling on a motion for

summary judgment, the court must view the evidence in the light most favorable to the nonmoving party, and it must give that party the benefit of all reasonable inferences to be drawn from the evidence. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Luigino's, Inc. v. Stouffer Corp., 170 F.3d 827, 830 (8th Cir. 1999).

## II. Background

Plaintiff Janelta Henderson was employed by defendant ADT Security Services, Inc. (ADT) from November 2000 to January 30, 2002,[1] when ADT terminated her employment. On February 12, 2002, Henderson filed a voluntary petition for bankruptcy under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Kansas, Case No. 02-20397. Schedule B to Henderson's bankruptcy petition required her to disclose all of her personal property. Under the Schedule B category titled "Other contingent and unliquidated claims of every nature, including tax refunds, counter claims of the debtor, and the rights to setoff claims," plaintiff's response was "None." Plaintiff did not disclose her potential claims against ADT at that time. Henderson signed a declaration, under penalty of perjury, that the Summary and Schedules (including Schedule B) were "true and correct." In a Statement of Financial Affairs, another piece of the February 12, 2002 bankruptcy filing, plaintiff was required to list "all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case." Plaintiff's response was "None." Henderson also signed a declaration, under penalty of perjury, that the Statement of Financial Affairs was "true and correct."

On March 26, 2002, the bankruptcy trustee filed a motion to convert Henderson's bankruptcy

---

[1]Plaintiff's amended complaint alleges that her employment was terminated on January 31, 2002. This discrepancy, while curious, does not affect the analysis of this motion.

2

case from Chapter 13 to Chapter 7 because she had "made no Plan payments" as required by Chapter 13,[2] and had "received or liquidated" proceeds from the settlement of an employment discrimination lawsuit against former employer Van Kampen Investor Services, Inc. ($11,394.34), and from a federal tax refund ($1,867.00). The trustee stated that upon conversion to Chapter 7, these funds could be used to pay plaintiff's unsecured creditors. On April 26, 2002, the bankruptcy court granted the motion, converting plaintiff's bankruptcy from Chapter 13 to Chapter 7. On July 8, 2002, plaintiff underwent a debtor's examination. But it appears that plaintiff did not disclose her claims against ADT at that time, as the bankruptcy trustee's Interim Reports, filed on August 14 and 20, 2002, mention nothing about such claims.

On November 14, 2002, plaintiff filed an EEOC charge of discrimination against ADT. Subsequently, on November 25, 2002, prior to obtaining a response from ADT, the EEOC issued a right-to-sue notice. On February 18, 2003, plaintiff filed the present suit against ADT. Plaintiff's claims in this suit arise from her employment with ADT and the termination of that employment and seek monetary damages. On February 17, 2004, the bankruptcy trustee filed another Interim Report, which did not list the present lawsuit against ADT as an asset of plaintiff's bankruptcy estate. On April 15, 2004, the bankruptcy court entered a final decree discharging plaintiff's bankruptcy under Chapter 7 and dismissing and closing her bankruptcy case. On May 4, 2004, the bankruptcy court reaffirmed the discharge but reopened the case, stating that the final decree had been entered in error. Throughout the entire bankruptcy proceeding, plaintiff never filed an amendment to Schedule

---

[2]The trustee noted that plaintiff had previously filed for Chapter 13 bankruptcy on October 15, 2001 (Case No. 01-23249) and had not made any Chapter 13 Plan payments in that case either. The first bankruptcy case was dismissed on January 29, 2002, roughly two weeks before the filing of the bankruptcy case at issue here.

3

B or to the Statement of Financial Affairs or filed any other document with the bankruptcy court disclosing the existence of her claims or her lawsuit against ADT.

The ADT claims and lawsuit were not the only assets plaintiff failed to disclose to the bankruptcy court. On June 28, 2001, she had filed an employment discrimination lawsuit against another former employer in different division of this court, styled <u>Janelta Henderson v. Van Kampen Investor Services, Inc.</u>, No. 01-0699-CV-W-2. Despite the existence of the Van Kampen suit as of the February 12, 2002 bankruptcy filing date, plaintiff did not list the suit as a claim on Schedule B and did not list it as a case filed within the preceding year on the Statement of Financial Affairs. Even after the existence and settlement of the Van Kampen case came to the attention of the trustee in March 2002, plaintiff failed to file an amendment to Schedule B or the Statement of Financial Affairs to reflect that asset. On December 6, 2002, the trustee filed a motion to compel, asking the bankruptcy court to order plaintiff to provide a complete accounting of the settlement proceeds.[3] On December 26, 2002, plaintiff's bankruptcy attorney filed a response to the motion, stating that "there has not been a reply from the Debtor regarding this motion as of the date of the response deadline."[4] There is no evidence that plaintiff ever properly disclosed the existence of the Van Kampen suit or settlement to the bankruptcy court in any filing.

## III. Analysis

Plaintiff's amended complaint in this case states various claims for racial discrimination stemming from her employment with ADT and the termination of that employment in late January

---

[3] Exhibits to that motion demonstrate that the trustee twice sent letters to plaintiff's bankruptcy attorney demanding an accounting of the settlement proceeds as well as bank records.

[4] The motion was later denied without prejudice for the trustee's failure to prosecute.

2002. ADT argues that all of plaintiff's claims must be dismissed for reasons relating to her February 12, 2002 bankruptcy filing. First, ADT asserts that plaintiff lacks standing to bring this action because her claims against ADT arose prior to the bankruptcy filing and are therefore the property of the bankruptcy estate. Second, ADT contends that plaintiff is judicially estopped from asserting that she has claims against ADT because she took an inconsistent position in the bankruptcy case, namely that no such claims existed. These arguments will be analyzed in turn.[5]

### A. Standing

Upon filing for a petition for bankruptcy, "all of the debtors' legal and equitable interests are transferred to the bankruptcy estate." United States ex rel. Gebert v. Transport Admin. Servs., 260 F.3d 909, 913 (8th Cir. 2001) (citing 11 U.S.C. § 541(a)(1)). The property of the bankruptcy estate "encompasses conditional, future, speculative, and equitable interests of the debtor" and "includes all causes of action that the debtor could have brought at the time of the bankruptcy petition." Id. at 913. So if a plaintiff files for bankruptcy after the acts giving rise to a potential employment discrimination claim, that claim belongs to the bankruptcy estate. Harvey v. Southern Minnesota Beet Sugar Coop., No. Civ. 02-4934 PAM/RLE, 2004 WL 368471, at *2 (D. Minn. Feb. 26, 2004)

---

[5]Plaintiff, proceeding pro se, filed an opposition to defendant's summary judgment motion that consists of one paragraph; it does not address defendant's standing or judicial estoppel arguments. First, plaintiff states that her bankruptcy was filed before the alleged employment discrimination occurred at ADT. She provides no support for this assertion. In fact, the bankruptcy at issue (which plaintiff correctly identified as Case No. 02-20397) was filed on February 12, 2002, a couple of weeks after her termination from ADT. Next, plaintiff states that the bankruptcy was filed in a different state and was reopened due to a clerical error. Where the bankruptcy was filed is insignificant, and plaintiff provides no authority to the contrary. Lastly, plaintiff states that her bankruptcy discharge remains in full force and effect, and that this case has nothing to do with her bankruptcy case. In short, plaintiff's statements do not rebut defendant's arguments and do not create a genuine issue of material fact precluding summary judgment.

5

(discrimination claims belonged to the bankruptcy estate as they accrued prior to the bankruptcy filing); Harris v. St. Louis Univ., 114 B.R. 647, 648 (E.D. Mo. 1990) (all elements of a Title VII discriminatory discharge claim were present as of the bankruptcy filing, so the claim belonged to the bankruptcy estate).

The bankruptcy estate's ownership of a claim is not dependent on the perfection of the claim through the exhaustion of administrative remedies. Harvey, 2004 WL 368471, at *2 ("[a] potential legal claim is undisputedly an asset and should be claimed as such in a bankruptcy petition."). As soon as a potential claim belongs to the bankruptcy estate, the debtor is no longer the real party-in-interest and no longer has standing to sue. See 11 U.S.C. § 323; Gebert, 260 F.3d at 914 (the debtor "no longer has an interest in any damages because the claim is no longer his"). After a bankruptcy trustee is appointed, "a Chapter 7 debtor no longer has standing to pursue a cause of action which existed at the time the Chapter 7 petition was filed. Only the trustee, as representative of the estate, has the authority to prosecute and/or settle such causes of action." Harris, 114 B.R. at 648.

In this case, plaintiff's race discrimination claims against ADT are grounded in events which occurred on or before January 30, 2002, the date of her termination. Plaintiff filed for bankruptcy on February 12, 2002, so her claims became property of the bankruptcy estate on that date, even though she had not yet filed an EEOC charge, received a right-to-sue letter or filed suit against ADT. Harvey, 2004 WL 368471, at *1-2. Upon the bankruptcy's conversion from Chapter 13 to Chapter 7 on April 26, 2002, the trustee became the only entity with standing and authority to decide whether or not to pursue the claims.[6] Thus, when plaintiff filed suit against ADT on February 18, 2003, she

---

[6]If plaintiff's bankruptcy had remained in Chapter 13, there is some authority that plaintiff would have had standing to sue ADT. See, e.g., In re Griner, 240 B.R. 432, 437 (Bankr. S.D. Ala. 1999) (noting a split in the case law and concluding that "Congress intended to provide

6

did not have standing to do so and was not a real party-in-interest.[7]

### B. Judicial Estoppel

Even if plaintiff did have standing to pursue her claims against ADT, judicial estoppel would prevent such action. "The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (quoting 18 Moore's Federal Practice § 134.30 (3d ed. 2000)). The purpose of judicial estoppel is to protect the integrity of the judicial process "by prohibiting parties from deliberately changing positions according to the exigencies of the moment." Id. at 749. Factors to consider include (1) whether the party's later position was "clearly inconsistent" with its earlier position; (2) whether the party "has succeeded in persuading the court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Id. at 750-51. The Eighth Circuit has held that failing to disclose a claim as an asset in a bankruptcy case is inconsistent with later asserting that claim in a civil case, and judicial estoppel is warranted to bar the claim. Gebert, 260 F.3d at 917-19.

---

chapter 13 trustees and chapter 13 debtors with concurrent capacity to litigate prepetition nonbankruptcy law claims.").

[7]Based on the court's determination later in this order that judicial estoppel bars plaintiff's claims, the court need not consider a potential substitution of the trustee as the real party-in-interest. In any event, plaintiff has not raised this issue. In cases less flagrant than this, I have been inclined to stay proceedings to permit an adjustment between a plaintiff and a trustee that would preserve a claim in a manner that is fair to creditors.

7

Here, there is no doubt that plaintiff's respective positions in the bankruptcy court and in this court are "clearly inconsistent." In her bankruptcy case, filed February 12, 2002, plaintiff took the position that she had no claims (against ADT or any other entity) that would constitute assets of her bankruptcy estate and stated as much on Schedule B. She maintained this position throughout the bankruptcy proceedings. In the present case, she alleges various employment discrimination claims against ADT arising out of acts and events occurring no later than her termination date of January 30, 2002, which predated the bankruptcy filing. Thus, in this court, she is now pursuing the very claims that she represented did not exist to the bankruptcy court.

As to the second factor, plaintiff did succeed in persuading the bankruptcy court to accept her position that she had no claims, as demonstrated by the bankruptcy court's April 15, 2004 order discharging plaintiff's debts and its May 4, 2004 order reaffirming the discharge. If the bankruptcy court had known about plaintiff's lawsuit against ADT – an undisclosed asset of the bankruptcy estate – it might not have discharged plaintiff's debts at that time. See, e.g., Barger v. City of Cartersville, Georgia, 348 F.3d 1289, 1294 (11th Cir. 2003) (it was "unlikely the debtor would have received the benefit of a conversion to Chapter 7 followed by a no asset, complete discharge had his creditors, the trustee, or the bankruptcy court known of a lawsuit claiming millions of dollars in damages.") (citation omitted). By omitting her claims against ADT from her bankruptcy filings and convincing the bankruptcy court that she had no such claims, she attempted to mislead either the bankruptcy court or this court by seeking damages for those claims here.

With regard to the third factor, plaintiff would gain an unfair advantage if not estopped from pursuing her claims. Plaintiff seeks to proceed with her claims against ADT in this court when she denied the claims' existence to the bankruptcy court and subsequently received a discharge of her

8

debts. If plaintiff were to prevail in the present suit, she could keep all monetary damages for herself and none would go the bankruptcy estate or her creditors because the bankruptcy court has already discharged her debts. That result would certainly constitute an unfair advantage to plaintiff gained by taking inconsistent positions.

Having found that the three factors above are satisfied, the court must determine whether plaintiff's failure to disclose her claims against ADT to the bankruptcy court was inadvertent or a mistake, such that judicial estoppel should not be applied. New Hampshire, 532 U.S. at 753 ("We do not question that it may be appropriate to resist application of judicial estoppel 'when a party's prior position was based on inadvertence or mistake.'"). "The failure to comply with the Bankruptcy Code's disclosure duty is 'inadvertent' only when a party either lacks knowledge of the undisclosed claim or has no motive for their concealment." Barger, 348 F.3d at 1295.

Here, plaintiff no doubt had knowledge of her undisclosed claims at the time of her bankruptcy filing. Plaintiff's race discrimination claims are all based on acts and events occurring on or before January 30, 2002, the date her employment was terminated. So when she filed for bankruptcy just two weeks later on February 12, 2002, she knew of these claims but failed to disclose them in her bankruptcy schedules despite her obligation to do so. Even if plaintiff had argued that she did not initially have knowledge of her claims, she certainly knew of them when she filed her EEOC charge on November 14, 2002 and when she filed suit against ADT on February 18, 2003. However, throughout the lengthy bankruptcy proceeding, plaintiff never supplemented or amended her bankruptcy filings to reflect the existence of her claims against ADT, the EEOC charge or this lawsuit. Plaintiff also had a motive to conceal her claims – a financial windfall. As discussed above, by failing to disclose her claims against ADT to the bankruptcy court, plaintiff effectively

9

hid an asset that rightfully belonged to the bankruptcy estate, which would have allowed her to keep any proceeds from this lawsuit for herself. Thus, plaintiff's failure to disclose her claims against ADT was not inadvertent but intentional.

This conclusion is bolstered by plaintiff's prior attempt to conceal another employment discrimination lawsuit from the bankruptcy court. Although plaintiff's suit against Van Kampen Investor Services had been pending for several months before her February 12, 2002 bankruptcy filing, she failed to disclose it on her Statement of Financial Affairs as an asset. After the trustee learned in March 2002 (through someone other than plaintiff) that the case existed and had resulted in a monetary settlement, he moved to convert the bankruptcy from Chapter 13 to Chapter 7 so that the proceeds could be used to satisfy plaintiff's creditors. Plaintiff repeatedly ignored the trustee's letters asking her to account for the proceeds, and he ultimately filed a motion to compel. As of the trustee's last report, plaintiff never amended her bankruptcy schedules or statements to reflect either the Van Kampen lawsuit or the settlement proceeds as assets. Given these facts, plaintiff's failure to disclose her ADT claims appears to have been a deliberate and intentional attempt to manipulate the bankruptcy court and this court to benefit herself. This type of manipulation is precisely what the doctrine of judicial estoppel was intended to prevent.[8]

---

[8] If plaintiff's nondisclosure had been inadvertent, the court might have considered a request by plaintiff (not made in this case) to belatedly amend her bankruptcy schedules and statements to reflect her claims against ADT. But because the nondisclosure appears to have been deliberate and intentional, the court finds that allowing a belated amendment in lieu of applying judicial estoppel would contradict the important policy considerations behind the judicial estoppel doctrine. "Allowing [the debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtor's assets." Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1288 (11th Cir. 2002).

10

As earlier demonstrated, plaintiff lacks standing to pursue her claims against ADT. Even if she did have standing, her claims still would not survive summary judgment. Because the court finds that all three factors for the application of judicial estoppel have been satisfied and because plaintiff's nondisclosure was not inadvertent, plaintiff's claims against ADT are barred by the doctrine of judicial estoppel and must be dismissed.[9] Therefore, ADT's motion for summary judgment relating to plaintiff's bankruptcy will be granted.[10]

## IV. Conclusion

For the foregoing reasons, it is hereby

ORDERED that defendant ADT's motion for summary judgment relating to plaintiff's bankruptcy (ECF doc. 62) is GRANTED. The Clerk of the Court is directed to enter judgment in favor of defendant ADT Security Services, Inc. It is further

ORDERED that the clerk of the court shall send a copy of this order by regular and certified mail, return receipt requested, to plaintiff, Janelta Henderson, 823 North 83rd Street, Kansas City, Kansas 66112.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

July 7, 2005

Kansas City, Missouri

---

[9]Other courts faced with similar facts have likewise applied judicial estoppel to bar employment discrimination claims omitted from bankruptcy filings. See Harvey, 2004 WL 368471, at *3; Lott v. Sally Beauty Co., Inc., No. 3:00CV1216J20TJC, 2002 WL 533651, at *4-5 (M.D. Fla. Mar. 5, 2002).

[10]Based on this ruling, the court will not revisit the motions denied without prejudice in a March 28, 2005 order.